Interactive Games versus FanDuel. Mr. Goldberg, whenever you're ready. May it please the court. We're here today because the board failed to give proper meaning to the update the user profile in response to the event language of Claim 9. On page 7 of the red brief, FanDuel says, quote, never argued any claim construction whatsoever during the IPR. Did you raise a claim construction argument during the IPR? Yes. Where is it in the record, please? So one place that we can see it in the record is if you look at appendix page 15, which is the board's final written decision. They recognize toward the bottom that we are giving particular meaning to the claims. They say, according to the patent owner, those claim limitations pertinently specify two requirements, storing the user's particular location in response to a recognized... How is that a claim construction argument? Where is your claim construction argument? Well, the board additionally recognized actually during the oral hearing that there was a dispute. This is at appendix page 40, appendix page 1041. The board asking about what actually needs to be required here. The petitioner had been arguing that our position was that the storing needed to happen immediately after the event, and I was being questioned about that. And we can see at lines 4 to 14 here, us giving the view that causation is what's required by the claim. And the board in its final written decision, if we go to appendix page 20, we can see here again the board starting to talk about the positions between the parties. The petitioner taking this immediately... The core of your argument seems to be articulated on page 3 of the gray brief, in which you say that your claim construction arguments are not waived because your, quote, claim construction positions on appeal are consistent with your positions about obviousness before the board. Am I correct? Yes. Before the board, there was not... No, am I correct that that's sort of the core of what you're saying? Yes. You say while neither party presented express definitions to the board, quote, which is what claim construction is about as far as I know. Correct. What legal authority supports that assertion? In the entertainer versus who case, this is cited in our gray brief at page 4. That case actually addressed a similar situation where there was not any explicit claim construction below. Instead, what had been happening was the party was making arguments about what the prior art disclosed and didn't disclose, but there was kind of an assumed claim construction. It was assumed this is what we're arguing the plain meaning is. And then in that case, because it was effectively the same argument that was still occurring, even though it had changed into a claim construction argument, that was deemed not waived. And that's the same situation. And that's a non-precedential opinion, correct? Yes. That is correct. So it's not finding authority on subsequent panels. That is correct. I would also point the court to the interactive gift versus CompuServe case. That did not get into this exact situation, but it did recognize that it was acceptable to be providing additional citations and new explanations. Well, the CAFC there said that while a party may not change the scope of its claim construction on appeal, it can clarify or defend claim construction. But you don't have a claim construction authority. Well, I think, Your Honors, that the... I mean, you can see that. Yes, we did not formally propose a claim construction below. But there was clearly a dispute between the parties about the meaning of this in response to language and whether it was something that needed to be immediately happening. So if you say something's plain meaning, right? Yes. And the other side says plain meaning. And you don't ask for a claim construction. All you're saying is this is the plain meaning. You're not asking for a plain construction, are you? Correct. So our position here, though, is that although we were arguing for plain meaning, they were arguing for plain meaning as well. When we got to the final written decision and the board wrote the decision down as to how the prior art mapped to the claims in doing so, it became apparent that what the board was doing was not the plain meaning, any reasonable meaning anyway. It, in effect, had kind of gone off the rails and ignored the language in the claims. And we can see this in the board's decision. What page are you on? Yes, one second, Your Honor. At appendix page 19. The board, toward the top of the page here, is talking about the storage that is happening. And it says, and this is about eight lines down or so, that it stores the updated data as part of the remote player's log file while the player plays games. And, again, this shows up on appendix page 21. Toward the top, the board pointing out that Vuong also updates, logs this information while the player plays the game. And the problem with this is that the player in Vuong does not play the game in response to the event that was identified by petitioners and the board. The access and re-access. We know this because if you look at figure five of the Vuong reference, and this is a figure that was identified, I believe, in that red brief by the petitioners. You can see a step 508. That says open player log file for game server, wager amount, player stake and average waiver. This is the step that petitioners identified where the storage actually happens. But if we look toward the top of this figure at step 502. And this is at appendix page 2762. The first step 502 is... I'm sorry I'm at a loss how this helps you as to the core argument that you say that the PTAB is wrong in its determination that Vuong discloses updating the user profile in response to the event. I mean, claim nine of 518 recites an apparatus comprising at least one processor with memory and software that will establish a user profile for a given user on a data storage device and update that user profile in response to an event. An event may be any suitable event which can serve as a trigger to change the profile information. So Vuong teaches storing a user's location in a user profile. It specifically discloses its apparatus collects statistical information regarding the location of a player as part of a log file for each player. It teaches updating that user profile by storing the user's location in response to an event. It specifically discloses its apparatus may interrogate the location of the remote gaming machine. It further provides that its apparatus may update a user's information when the user terminates play or at selected intervals throughout the day or when the player subsequently returns. So it teaches both storing and updating in response to an event. I mean, those are events, are they not? Well, they may be events, but they are not the event in the claim. The event in the claim, and this is at column 28 of the patent around line 18, specifies that we're going to recognize the event when the occurrence of the event comprises to determine, based on the location data, an existence of the user in a particular location. So the event here in the claim is an event where the particular location is determined. And in the Vuong reference, the only place that that is alleged to have happened, as the board found, is when it is checking to determine whether there is jurisdictional allowability to be able to do the gaming event. That's the location that the board identifies. Where does claim 9 of the 518 patent require a location-based event? In column 28, it says it requires determining based on, I'm reading from column 28, the location data that a user is in a particular location when an event occurs. An event is any suitable event that can trigger a change to the profile information, such as the occurrence of a particular day or week, so on. Claim 9 doesn't require a location-based event, necessarily. A day or week change is not a location-based event, is it? The change of day or change of week may be an event, but in claim 9, the event in addition to that would also need to include the determination of the user being in a particular location, because that is what is required in column 28, around line 20 there. Mr. Goldberg, before your opening session closes, I wanted to ask you one question, please. The last clause, well, it's not the last clause of the claim, but the last clause that seems to be in focus here that you were discussing somewhat with Judge Wallach, says we're going to update the user profile in response to the event. Are you saying that there is any kind of, to get a little better fix on that from my standpoint, are you saying there's a time requirement in there in terms of immediacy, or are you saying that the update cannot happen more than one or two or three steps down the road? What do you really mean when you say, in your view, the in response? Does it have to be right away, or can it be a little ways off, or can there be intervening events? How do you define it? In our view, it is not a timing issue. It is not whether other events may occur in between. It is a causation issue. It is an issue of, is this something that, when it happens, when an event happens, will it necessarily cause the storage to happen? And the reason that we are saying that is the specification differentiates between different types of triggers. This is appendix 71, column 5, line 29 to 32. And some of the things that it specifies as possible triggers are events on the one hand, or happening at different periods of time, so intervals is what the petitioners are referring to, or the occurrence of some other user activity. So it is differentiating, in the specification, time-based things versus you have an event that triggers something else to happen. So you are saying it has to be a trigger. In your view, causation is the key factor. Yes, causation is the key factor, and that goes back to the exact same thing that I told the board when asked this similar type of question. Yeah, you said timing isn't a factor. Yeah, timing isn't an issue, it's just cause. So again, the reason that all of this matters is that if you look at the access, the reacts of access events that were relied upon by the board, these are not things that cause any storage to happen. Instead, going back to that figure 5 again in Vuong, you need to be first playing the game in order for any of these profile updates to occur, in order for any storage to occur, you have to actually be playing the game. And this is kind of like the door example that we gave in our bravery thing. You can walk up to a casino, the door can be open. That means you have access. You are able to walk in, but that doesn't necessarily mean that you would ever walk in, or that you would ever play the game. And that's the situation that we have here. The prior art never gets to the, you actually would do the storage, because it's possible that somebody shows up in a location, it's deemed that they're legally in that location, but then it stops. They never actually play the game, they do something else. You've exhausted your rebuttal, so we'll wait a couple of minutes at the end. Good morning, Your Honor. May it please the Court? I want you to talk about whether the claim construction arguments are preserved. Your Honor, the starting point for my argument is going to be exactly that, which is, if you look at the gray brief from Appellants, they are asking for a very specific construction. And this is on page 13 of the gray brief. They say, Claim 9 requires a location-based triggering event in which a user is recognized as arriving at a particular location. So we have this user arriving at a location, and it's a location-based trigger. That construction was never advocated at all. It appears from the concession at page 3 in the gray brief, no construction was advocated. Indeed it wasn't. The concept of what is an event was not raised. There were a lot of arguments around whether the storage of the location information was in response to, and the patent owner below referred to it as the alleged event, but that was the framing of the argument. Is the location data stored in response to the alleged event? The nature of the event was never challenged by the patent owner, much less with a specific construction before the Board. And here we have the appellant coming to this Court and asking for a very specific construction. And in fact, a specific construction that reads out a number of the embodiments out of the 518 patent. So not only are they asking for a construction that I believe they've waived, but it's a construction that is not correct. It is presumptively not correct because it reads out, as I said, a number of the disclosures of what an event can be in the 518 patent. I'd like to just go there. Your Honor has already read from it, but in the 518 patent, at column 8, and line 63, following on to column 9, and this is the discussion of the event in the 518 patent, the event at step 1014 may be any suitable event which can serve as a trigger. I'm not going to read the whole thing, but Your Honor saw days of the week, hours of the day. I mean, these are things that aren't even related to the user. They're just passage of time. If we go on, and I'll highlight on down in column 9 at lines 22 to 23, we see that an event may be the start of a tournament or a sporting event. If we look contemporaneously with our current time, it could be the start of a Super Bowl would be the event. That event is a suitable event because it is something that can trigger the remainder of the requirements of Claim 9. If we look at Claim 9 and just take the Super Bowl as an example of an event, I'm not going to go through all of Claim 9, but focusing on the limitations that are in dispute, the system could recognize an occurrence of the Super Bowl, wherein part of recognizing the occurrence of the Super Bowl comprises. I think that comprises is very important because it's just saying the recognizing of that event can include or will include based on location data determining the existence of a user at a particular location. Now we jump down to the next limitation, and based on that determination of the existence of the user in a particular location, we can initiate a gaming session. The Super Bowl has started. We're going to inquire from the mobile device what the location of the user is and determine that location. If they are in a legal jurisdiction where betting is permitted, that user can then bet on in-game activities at the Super Bowl and initiate a gaming session. As part of that, the claim also specifies that the location is stored. So you have a trigger being the Super Bowl. You have a sequence of events that flows from that, including location determination, storage of the location, and then, if appropriate in that jurisdiction where the user is located, initiate the gaming session. That's the way Claim 9 works. And what the appellant is asking you to do is to read out those viable embodiments. And that's wholly inappropriate for reasons of waiver. It's wholly inappropriate for reasons of claim construction. And it is really the appellant's only challenge to the teachings of law is this waived argument. There's one question. How exactly does the Super Bowl information get updated? The computer there knows that the Super Bowl is going on and it just... How does that work exactly? You use the example of the Super Bowl as the event. We know the Super Bowl starts at 6.30. What does the computer do? How does it know that? It's not different than the days of the week example. Your server would be monitoring the passage of time vis-a-vis events. Have we reached Tuesday? Have we reached the Super Bowl? The server would recognize that as an event that has occurred and then interrogate the mobile device. Give me your location. At that point, the location is sent to the server. The server can determine based upon that location information, is gaming permitted in this jurisdiction? Are we in New Jersey, for example? In that circumstance, the server monitors for events. How does it monitor for events? I don't know that that's specified in the claim. You're saying it just can do that. The server is sitting there in the casino and it can somehow determine if the World Series starts today or the Kentucky Derby starts today. Correct. Sort of a Ladbrokes, the English betting parlor kind of approach. Anything that's bettable wasn't morally acceptable. I digress, but the betting on the Super Bowl was quite interesting. You can have play by play. Is the runner going to go 15 yards? It's amazing what they're doing now, but I digress from my argument. On the in response to argument, again, what Vuong teaches is really the same thing as the 518 patent. It was an access restriction device, and fundamentally what Claim 9 is, it's also an access restriction system. It is checking the jurisdiction to make sure that gaming is legal and then permitting or initiating that session in response to a determination that it is legal. That is exactly what the disclosure of Vuong says. Again, in response to, you've heard, it's not a timing restriction. It is, is there a trigger, and that trigger leads to a series of occurrences that result in the player being allowed to participate in a gaming activity. Vuong, as fully noted, and I would just refer the court to the final written decision, and it really spans from pages 18 through 21 of the final written decision. The board addressed this issue just head on. It asked the specific question of whether it was in response to. It walked through paragraphs 33, paragraph 49, paragraph 50 of Vuong and made its factual findings that that series of events was occurring, including the storage of the location data, was occurring in response to the event of a user trying to access the system to initiate a gaming session. And that is, that disclosure in Vuong is, it just aligns almost one-to-one with the 518 specification. So to say that that disclosure is not consistent with Claim 9, again, you're reading out the fundamental nature of the 518 patent in so doing. Your Honors, do you have any other questions for me? Mr. Goldberg, I bet you can't do it in two minutes. I'll just make quick points here. First, I wanted to, going back to the waiver issue, Judge Wallach, and Judge Preston, in terms of case law support that we have, we can also point to the Harris court versus Erickson case. That's a case where the claim construction changed slightly between the two proceedings as it went up. And because the same general concept was there, it was deemed not waived. Now, here, yes, we did not expressly say this is claim construction, but we were arguing about the cause, it being causation, and that is the same argument that we are still making today. And with respect to this Super Bowl type example, where you're looking at an event that is not actually the location, I want to point, Your Honors, to one portion of the specification that I think provides a good example of the type of event that we can be talking about in Claim 9. In Column 11, lines 48 through 55, there is an example of an event here that is actually tied to two things. It is tied to both location and also tied to something else, like predetermined or random time. And this is an event where, depending on the time, depending on the location, the profile can be set up and the gaming can be customized such that the house will do a matching bet. So that is the type of event that we're dealing with in Claim 9. It, yes, can include other things, but at a minimum it needs to include the location determination. And as we discussed before, because the events that they've identified... The location determination isn't the only kind of event. Correct. It is not the only type of event, but in Claim 9 it is one of the requirements of the event. And because the identified events by petitioner do not ever cause the gameplay to start and thus the storage to happen, they do not meet the claim limitations, and for those reasons we believe the Court should reverse or at least remand the case. Thank you. Thank you.